IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARVEY MIGUEL ROBINSON, JR. | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | NO. 08-3156 |
| v. | : | |
| | : | |
| JEFFREY A. BEARD, et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

BUCKWALTER S. J.                                                                                                   July 22, 2009

Currently before the Court is Defendant Felipe Arias, M.D.'s Motion to Dismiss the Complaint of Harvey Miguel Robinson, Jr. (Doc. No. 15), and Plaintiff's Response (Doc. No. 24). Additionally before the Court is Defendant Jeffrey A. Beard's Motion to Dismiss the Complaint of Harvey Miguel Robinson (Doc. No. 16), and Plaintiff's Response (Doc. No. 26). For the following reasons, the Court grants both Motions to Dismiss with prejudice.

I.   **FACTUAL AND PROCEDURAL HISTORY**

Plaintiff Harvey Miguel Robinson, Jr., a prisoner at the State Correctional Institution at Graterford ("Graterford"), filed this section 1983 action seeking damages, a declaratory judgment, and injunctive relief based on the use of excessive force, the denial of due process, the delaying/denying of medical care, and the violation of his Fifth, Eighth, and Fourteenth Amendment rights.

On July 3, 2006, Corrections Officer Toms went to Plaintiff's cell and asked him to get dressed so that he could escort Robinson to the law library. (Pl.'s Resp. Def. Beard's Mot.

Dismiss, Ex. A, 1.) Plaintiff alleges that when he reached down for his socks and shoes, he was grabbed by his upper body and pulled out of his cell, upon which he was handcuffed, kicked, and punched by Toms and Corrections Officers Beretsky and Wilcox. (Id.) After this altercation, Corrections Officers Carlson and Weaver escorted Plaintiff to the prison medical center. (Id. at 2.) Upon returning to his cell from the medical center, Plaintiff received two falsified misconduct reports, one from Toms and another from Corrections Officer Frushon. (Id.) The reports stated that Toms and Frushon arrived at Plaintiff's cell to escort him to the library, handcuffed Plaintiff, when he "slipped the handcuffs" and attempted to hit Toms in his head and body. (Id.) Plaintiff claims that these reports have been falsified to cover up the fact that he was assaulted. (Id. at 3.)

Plaintiff alleges that he has been denied, for well over a month, all of his needed legal material and religious material which has interfered with his ability to correspond with his attorneys, family members, and supporters. (Id.) He also claims to have been denied/delayed medical treatment. (Id.) Despite that claim, he acknowledges that when he submitted numerous medical call slips after the altercation, he "was seen by/and spoke directly to Defendant Arias." (Pl.'s Compl. ¶ 20.) As time passed and his nervous system condition worsened, Plaintiff says he continued to submit sick call slips. (Id. ¶ 31.) On December 1, 2006, during a "doctor line" visit with Defendant Arias, Plaintiff was approved for an MRI on his upper spine. (Id. ¶ 32.) Dr. Arias explained to Plaintiff that the MRI showed that he had two ruptured disks and a fractured vertebrae, and he ordered additional tests to measure nerve damage. (Id. ¶ 36.) Plaintiff was taken to a private doctor's office, where nerve conduction studies were performed to measure nerve damage. (Id. ¶ 41.) Plaintiff claims that "because of the complete deliberate indifference

exercised by Defendant[] . . . Dr. Arias, to Plaintiff's condition and obviously serious medical needs . . . Plaintiff's condition drastically worsened . . . to the point where it had an almost crippling affect on Plaintiff's walking and all around common and everyday practices." (Id. ¶ 53.) Plaintiff contends that Defendant Arias' decisions, along with those of Defendants DiGuglielmo, Knauer, Stanishefski, constituted deliberate indifference and were "completely medically unacceptable in theory and practice, and in total contrast with any/and all acceptable medically professional judgment, practice, and standards." (Id. ¶ 54.)

## II. STANDARD OF REVIEW FOR MOTION TO DISMISS

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); see also Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), the Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965. Following Twombly, the Supreme Court subsequently defined a two-pronged approach to a court's review of a motion to dismiss. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Thus, although "[r]ule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. Second, the Supreme Court

emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but not shown, an entitlement to relief. Id. see also Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (holding that (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" Id. at 234 (quoting Twombly, 127 S. Ct. at 1965).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., Civ. A. No. 08-626, 2008 WL 2779079, at *2 (W.D. Pa. Jul. 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief, not detailed factual allegations. Phillips, 515 F.3d at 231. Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

The United States Supreme Court has unanimously held that a *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appear "beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).)

## III.    DISCUSSION

### A.    Motion to Dismiss of Dr. Felipe Arias

Plaintiff filed this section 1983 action against Defendant Dr. Felipe Arias contending that he received inappropriate medical care as a prisoner from Dr. Arias in violation of his Eighth Amendment rights.

Even applying the liberal *pro se* standard, Robinson's claims against Dr. Arias, both in his capacity as treating physician and as medical director of the Corrections Department, are not cognizable under Section 1983. In Estelle v. Gamble, 429 U.S. 97 (1976), the plaintiff, a prisoner, was injured while working for the prison. Id. at 100. Immediately after the injury, he was treated by a physician, given pain relievers and muscle relaxants, and was directed to refrain from additional manual labor. Id. at 100-101. Upon telling prison officials about the physician's advice, the plaintiff was placed in solitary confinement and, despite suffering from chest pains, he was refused further medical treatment for a period of time by prison officials. Id. at 102.

Justice Marshall delivered the opinion of the Court, stating that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Id. at 104. "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying medical care." Id. at 104-105. As the Court noted, however, an inadvertent failure to provide adequate medical care cannot be said to constitute an

unnecessary and wanton infliction of pain; the prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. Id. at 105-106. Furthermore, the question of whether an X-ray or additional diagnostic techniques or forms of treatment should have been administered is a classic example of a matter for medical judgment and such decisions does not represent cruel and unusual punishment. Id. at 107. Ultimately, the Court rebuffed the plaintiff's objection, finding that it was "based solely on the lack of diagnosis and inadequate treatment of his back injury." Id.

The Court addressed this issue again in Farmer v. Brennan, 511 U.S. 825 (1994), when a transsexual prisoner brought a Bivens suit against prison officials, claiming that officials showed "deliberate indifference" by placing him in the general male prison population, thus failing to keep him from harm allegedly inflicted by other inmates. Id. at 829-30. The court stated that:

> [A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk or serious harm exists and he must also draw the inference.

Id. at 837. Despite Plaintiff's assertions that he has "a prototypical case of deliberate indifference," (Pl.'s Resp. Def. Arias' Mot. Dismiss 9), Plaintiff has failed to show that Defendant Arias was aware of any facts that suggested an excessive risk or that he intentionally denied necessary medical care. Deliberate indifference, in this context, is a subjective inquiry and Plaintiff must therefore produce evidence that the prison official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Farmer, 511 U.S. at 838. A prison official's negligence will not sustain a

6

claim of inadequate medical treatment.  Id. (citing Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993)).

Based on the facts averred, Plaintiff was afforded adequate medical care as he was seen multiple times by Dr. Arias, per Dr. Arias' suggestion, he received X-rays and an MRI; he was taken to a private doctor, and he had tests to determine the extent of his nerve damage.  Although Plaintiff does not agree with Defendant Arias' medical treatment, disagreement is not enough to establish deliberate indifference.  At its core, this dispute seems to be nothing more than a difference of opinion between a patient and a doctor.  Accordingly, this Court grants Defendant Arias' Motion to Dismiss.

      B.      **Motion to Dismiss of Jeffrey A. Beard**

Plaintiff filed this section 1983 action against Defendant Jeffrey A. Beard seeking damages, a declaratory judgment, and injunctive relief based on the use of excessive force, the denial of due process, and the delaying/denying of medical care, in violation of his Fifth, Eighth, and Fourteenth Amendment rights.  (Pl.'s Mem. Opp. Def.'s Mot. Dismiss 1.)  Defendant Beard is the Secretary of the Pennsylvania Department of Corrections.  Id. at 2.  Serving in such a capacity means that he is responsible for the "overall day-to-day operation and running of the entire Department of Corrections . . . [as a result] he was fully informed and aware that Plaintiff was assaulted . . . [and] that two misconduct reports were falsified in order to cover up the assault."  Id.  Plaintiff believes that, "Defendant Beard's awareness and knowledge [of the alleged assault], and specifically of Plaintiff's serious medical needs and conditions, and the fact that he was purposely being delayed/denied any and all medical treatment . . . [shows he] was deliberately indifferent to Plaintiff's serious medical needs and conditions."  Id.

7

Accepting all averments as true, Plaintiff fails to show how Defendant Beard's actions deprived him of a guaranteed right under the United States Constitution. As we stated when addressing the claim against Dr. Arias, Plaintiff fails to allege that the care he received established deliberate indifference. As such, Defendant Beard had no reason to believe that Plaintiff was receiving less than adequate care.

The Third Circuit has stated that absent a reason to believe that prison doctors or their assistants are mistreating a prisoner, a non-medical prison official, like Defendant Beard, will not be chargeable with the Eighth Amendment *scienter* requirement of deliberate indifference. Spruill v. Gillis, 372 F.3d 218, 236 (3d. Cir. 2004). If a prisoner is under the care of a medical expert, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. Id. at 236.

> "This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor."

Id. Plaintiff fails to allege that he was mistreated by the prison medical staff, let alone a reason as to why Defendant Beard should have believed that Plaintiff was being mistreated by the prison medical staff. Accordingly, Plaintiff's deliberate indifference claim against Defendant Beard is denied.

In addition to Plaintiff's claim of deliberate indifference, he raises a question about Plaintiff Beard's liability for consenting to the falsification of two misconduct reports. He argues:

> The actions of defendant[] Beard . . . in ignoring/and refusing to take action and provide a remedy concerning the fact that defendants Toms and Frushon each falsified/and fabricated a misconduct report to 'cover up'/and (conceal) the above mentioned assault, despite their knowledge of the above described due process violation, constituted deliberate indifference and further denied the plaintiff the due process of law in violation of the Fifth and Fourteenth Amendments to the United State Constitution.

(Compl. ¶ 58.)

The Court is not persuaded by this argument. The Third Circuit case of Smith v. Mensinger 293 F.3d 641 (3d Cir. 2002), is particularly relevant to this discussion given its similarity in facts and law. In Smith, the plaintiff filed a *pro se* civil rights action, under 42 U.S.C. § 1983, against a number of corrections officers and a hearing officer, claiming that they used excessive force against him and that they subsequently falsified reports in an effort to cover up the incident. Id. at 646. Smith argued that the district court erred in dismissing his Eighth Amendment and due process claims as a result of the falsified misconduct reports. However, the Third Circuit did not agree with Smith and upheld the district court's finding, saying "the district court correctly relied upon the analysis . . . in Freeman v. Rideout, 808 F.2d 949 (2d Cir. 1986) . . . [where] so long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim. Smith, 293 F.3d at 654 (citing Freeman, 808 F. 2d at 953.)

In the case at hand, Plaintiff fails to assert that any procedural requirements were violated after the falsification of the misconduct reports. Failure to claim some other procedural deprivation, such denial of a hearing to confront and challenge the allegedly perjured testimony offered in support of the misconduct reports, ultimately leads this Court to find that Defendant Beard's acceptance of the misconduct reports did not violate Plaintiff's due process rights.

9

Finally, Plaintiff alleges that Defendant Beard, failure to oversee, supervise, and adequately train Defendants Toms, Beretsky, Wilcox, and Frushon constituted deliberate indifference in violation of his Eighth Amendment rights. (Comp. ¶ 60.)

Plaintiff's assertions lack adequate legal basis. The United States Supreme Court has repeatedly rejected the argument that a supervising public official has an affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates. In Rizzo v. Goode, 423 U.S. 362 (1976), it held that even where a pattern of constitutional violations by subordinates is shown, supervising officials do not violate the constitutional rights of the victims of such misconduct unless they have played an affirmative part in that misconduct. Id. at 377. In a more recent case, the Supreme Court affirmed this idea saying, "[b]ased on the rules our precedents establish . . . Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Ashcroft v. Iqbal, 129 U.S. 1937, 1948 (2009).

The Third Circuit addressed this issue in Commw. of Pa. v. Porter, 659 F.2d 306 (3d Cir. 1981), where the members of a borough council had a duty under state law to oversee the affairs of the borough police department. The council received complaints about a series of incidents in which one department officer had violated the constitutional rights of citizens, but they took no disciplinary or other action to discourage repetition of the same conduct in the future. Id. at 310. The Third Circuit held that to be legally responsible, supervising officials, "must have played an affirmative role in the deprivation of the plaintiffs' rights," noting that "the officials' misconduct cannot be merely a failure to act." Id. at 336. Because "the Council members' official actions constitute[d] no more than inaction and insensitivity," they concluded that the Council members

had not violated the plaintiffs' rights despite their knowledge of a pattern of misconduct by one of their subordinates.  Id.

This Court fails to find any statement within Plaintiff's Complaint that Defendant Beard had an affirmative role in the actions of Defendants Toms, Beretsky, Wilcox, and Frushon. Despite the allegations of a brutal assault, this Court finds that, at most, Defendant Beard's actions and inactions rose to the level of insensitivity, which, as this Circuit has stated, is insufficient to hold a superior liable for a constitutional violation.  Accordingly, this Court grants Defendant Beard's Motion to Dismiss Plaintiff's Complaint, with prejudice.

An appropriate Order follows.